Good morning all. Our first case this morning is Hatfield v. Barr. Mr. Walters. Good morning, your honors, and may it please the court. Tice Walters for the government. Plaintiff here is barred from possessing a firearm because he was convicted of a federal felony long recognized as demonstrating grave disrespect for the law. This court's recent opinion in Cantor involving another individual convicted of a nonviolent felony leaves no room for Hatfield's as-applied challenge or the sort of individualized inquiry into dangerousness that Hatfield seeks here. Moreover, Cantor's result was consistent with both this court's prior decisions in cases like Yancey, Scoyin, and Mesa-Rodriguez, as well as every other court of appeals to have considered as-applied challenges brought by convicted felons. And there is simply no reason for reaching a different result in this case. So I do think initially it is important to emphasize that this case is on all fours with Cantor, that there's really no daylight between them in any meaningful sense. And I think that Cantor's ultimate holding that because Cantor was convicted of a serious crime, that as applied to him, Section 922G1 is constitutional, applies fully here. Section 1001, of course, is a serious crime. It is a bedrock of American criminal law. It is punishable by up to five years in prison. And I don't think that anyone has identified any support for the proposition that this is some sort of a minor infraction. And as this court made clear in cases such as Scoyin, of course, Congress is not limited to case-by-case exclusions. And one such entirely permissible exclusion is the exclusion from firearm possession of felons, both violent and nonviolent. Of course, this court in Cantor did reject the sort of individualized inquiry that Cantor seeks here. And such an inquiry would be unworkable, as the court's decision in Cantor makes clear, as well as the history of 925C, in which Congress recognized that even the ATF, with all of its resources and its ability to conduct wide-ranging investigations, was not able to adequately predict which individual felons were likely to be dangerous going forward. And I would also emphasize that not only is the interest here limited to dangerousness, but there is an interest in maintaining, as Mesa Rodriguez points out, in keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons, and preventing people who have already disrespected the law from possessing guns. Obviously, 922G1 is tailored precisely to that interest. We do think that's consistent, of course, with Heller's discussion of the right as belonging to the law-abiding and responsible citizenry. Of course, the court does not need to reach Step 1 anymore than it did in the Cantor case, but we think that that announcement by the Supreme Court is helpful both for the Step 1 and Step 2 inquiries, ultimately. If the court has no questions at this time, I'm happy to reserve the remainder of my time for rebuttal. All right. Thank you, Mr. Wolters. Thank you, Your Honor. Mr. Obermeyer.  My name is Steve Obermeyer. I'm here with my colleague, Megan Brown, on behalf of Mr. Hatfield. The district court correctly held that Section 922G1 is unconstitutional as applied to Mr. Hatfield. Contrary to what the government says, Cantor does not foreclose this challenge. Judge Gilbert issued his opinion long before Cantor, but the common-sense reasoning that Judge Gilbert offered still applies here. Cantor expressly left open the possibility of an as-applied challenge by a nonviolent felon like Mr. Hatfield. In fact, it was required to after Williams, as Williams analyzed that case on an as-applied basis. And we went under Cantor for two reasons. The first is that the circumstances surrounding Mr. Hatfield's lone 28-year-old conviction are materially distinguishable from Mr. Cantor's more serious crime. Mr. Cantor pled guilty to Medicare fraud eight years ago. Counsel, it seems to me implicit in your argument, and necessary for your argument to succeed, that it is possible to distinguish by looking at the crime committed how dangerous in the future the felon will be. What do you rely on for that belief? Well, Your Honor, I guess two things. One is, to be clear, we're focused on the circumstances surrounding the conviction at issue that led to the section 922. I'm aware of that. I'm asking, what do you rely on for the belief that it's possible to infer from those circumstances, as opposed to other circumstances, that one person is more dangerous than another? Well, relying on the circumstances that it is that conviction that puts you under 922 to prove it. No, look, this is an empirical question, right? It's subject to empirical study. You can't just point to the circumstances to say, well, I'm relying on the circumstances to assert that one set of circumstances implies more danger than another. My question is, what makes you think that it does? Well, Your Honor, it's the government's burden to show evidence of this. No, no. Do you have any basis for your belief? One thing that empirical scholars in this field take as established is that a half-century worth of studies have shown that it is impossible to predict future dangerousness by looking at a criminal's record. Now, have you consulted that literature? Your brief doesn't discuss it. Because the government didn't bring that literature up in this case, Your Honor. It's their burden to present that literature. Look, you are the plaintiff. You want us to hold an act of Congress unconstitutional. The cornerstone to your argument is that it's possible to distinguish felons according to their risk of future danger. And as I've said, as far as I understand, all the scholars in the field think that's not possible. Now, you don't discuss any of that work. Where does that leave us? Two things, Your Honor. None of that work was raised in this case. I don't care whether it was raised in this case. I am raising it. You are the plaintiff. Understood, Your Honor. But also, the only evidence that's been presented by the government that you can't do this, the studies that were brought up in Cantor, those studies don't apply to Mr. Hatfield. Those studies talk about nonviolent felons who served jail time. Mr. Hatfield did not serve jail time. That evidence does not show that, Your Honor. So you're saying that, to your knowledge, all of the empirical studies deal with only violent felons or only felons who have served time in prison? I can't say that every study ever, Your Honor, but certainly the studies that were in Cantor were looked at. Have you done any research along these lines? Mr. Hatfield, no, we have not done research along those lines, Your Honor. Okay, thank you. And I've already made my point on that about the burden, Your Honor. But going back to Cantor, and I think somewhat in response to this is one of the things that Cantor makes clear is that the burden is on the government to show that the Step 2, that there's support for Step 2. And in this case, in Hatfield, there is no evidence that someone like Mr. Hatfield has a propensity for gun violence. That's the interest at issue here. And there's no evidence of that in this record. Ezol said that the government has to show actual reliable evidence of fit. There is none of that in this case. And they can't bootstrap on the evidence in Cantor because none of it applies to Hatfield, as I was just saying. Those studies, I think there were five studies referenced in there. Four of those studies refer to individuals who served jail time. That on its face does not apply to Mr. Hatfield. And so, again, they can't bootstrap on that in order to disarm Mr. Hatfield. And as Judge Gilbert stated, if there is any case where an as-applied challenge to 922G1 should be successful, it's this one because of the minor nature of Mr. Hatfield's crime. So, again, Cantor applied the two-step framework from Ezol. On the first step of the framework, Cantor says, well, the history is inconclusive about whether felons are inside or outside the Second Amendment. And under Ezol, that means you have to go to step two. And under step two, again, the government has to demonstrate fit. It's the government's burden at that stage. And basically, the Cantor court did three things in determining that 922G1 was constitutional as applied to Mr. Cantor. So, first, it determined that preventing gun violence is an important government interest. Second, it looked at the facts surrounding Mr. Cantor's conviction, as it was required to do under this court's decision in Williams. It determined that Mr. Cantor's nonviolent felony was serious. And third, it looked at the evidence submitted by the government to demonstrate that disarming felons, like Mr. Cantor, furthers that interest. Now, applying that analysis here, compared to Mr. Cantor, Mr. Hatfield's conviction does not demonstrate a propensity for gun violence, such that he can be banned for life from exercising his fundamental Second Amendment rights. And just to go through the facts of the two cases, Mr. Cantor was convicted of Medicare fraud. The government paid $375,000 in Medicare reimbursements for ineligible footwear products produced by Cantor's company. In short, Cantor fraudulently represented that the products were eligible for reimbursement, and he pleaded guilty to mail fraud under Section 1341. He was sentenced to a year in prison. He was required to pay a criminal penalty of $50,000. And he reimbursed Medicare for over $27 million in a related False Claims Act case. This is a much more significant crime than Mr. Hatfield's. In finding that the government had satisfied its burden to disarm Mr. Cantor, the majority focused on the size of the sentence and the scope of the crime. The majority stated that Cantor is, quote, unlike the challengers in the Third Circuit's Binderup decision who, quote, were convicted of non-serious crimes and who served no prison time. It further stated that Cantor was, quote, convicted of a serious federal felony, and that, quote, he did not face a minor sentence. And it stated that, quote, Cantor's crime defrauding the federal government out of hundreds of thousands of dollars reflects significant disrespect for the law. So the Cantor court was focused on the individual specific circumstances surrounding Mr. Cantor's crime. Mr. Hatfield's conviction was substantially and materially less serious. The story of Mr. Hatfield's crime, which we describe in our brief, is not disputed. 28 years ago, Mr. Hatfield worked for the railroads and was laid off. He picked up a part-time job, which he had planned to quit in order to obtain the railroad benefits from the government. But his part-time boss offered to keep employing him, and a woman working for the railroad benefits office advised him not to disclose his part-time work. As a result, he received a mere $1,627 in retirement benefits for which he was ineligible. This is an objectively negligible amount, and it is even more so compared to the $375,000 that Mr. Cantor received, not to mention the $27 million related civil settlement with Cantor. When the payments were discovered, Mr. Hatfield pled guilty to making a false statement to the government in violation of Section 1001. Now, the government said that that's a very serious crime with a lot of bedrock of criminal law. Compared to 1341, Mr. Cantor's crime, it's definitely not a serious crime. 1341 had up to 20 years imprisonment. 1001 has up to five years. 1001 carries five years, doesn't it? Yes, Your Honor, five years. For mail fraud, it's 20 years. And so it's less serious than mail fraud. And the other important point is he served no jail time or supervised release, and he received only probation and restitution in the amount of the ineligible benefits, which was about $1,600. As such, it's just not credible to argue, as the government does, that Mr. Hatfield's crime is a serious federal felony like Mr. Cantor's. Like the bender-up challengers cited by the Cantor majority, Mr. Hatfield served no prison time. He faced only a minor penalty, indeed a lesser penalty than most misdemeanors, and he did not defraud the government out of hundreds of thousands of dollars. It was $1,600. It's a minor crime no matter how you look at it. What do you think of his prior record? Do you mean the... Drunk driving. It was a misdemeanor. It was long before the conviction that's relevant to his actual disarmament, and he's been clean for 28 years. I don't think it really has any bearing on this whatsoever, Your Honor. And I've already gone into some detail about the absence of evidence in this case, but I would like to talk about the studies just a little bit. And I already mentioned that all but one of the studies referenced relate to recidivism of nonviolent offenders who did serve jail time. But those studies have a lot of issues. I mean, there are studies in there where the nonviolent offender had other violent felonies. There are studies in there where there's a misdemeanor study referenced that addressed specifically violent misdemeanors. And the point is because it's the government's burden to raise that, it should have been raised below, frankly. Let me just say I can't understand this repeated assertion that it is the government's burden. The plaintiff has the burden in any suit, and you represent the plaintiff. And the burden to show us that a statute is unconstitutional is pretty high. I don't see how you can just say, I ignore the empirical literature. I pay no attention to it. I'm just assuming the opposite of what every available study shows. But, Your Honor, my... You can't play burden-shifting games to ignore the world. Respectfully, Your Honor, I'm not playing burden-shifting games. I'm relying on the language in Cantor about whose burden it is at step two when you're removing someone's fundamental right, fundamental Second Amendment rights. And... But with respect to the studies, and again, the only studies that have been shown, and they repeat a lot across these cases, are the ones that are in Cantor. And as I was saying, the misdemeanor study and all these studies... And they're hardly the only studies out there. That may be, Your Honor, but they're... This is a very large empirical literature. It's been worked on for more than 50 years. You're asking us just to stick our heads in the ground as if we were proverbial ostriches. I don't see how we can do that. Your Honor, respectfully, I'm asking you to put the government through its paces, which is what this Court said in Williams. And by just accepting that there's empirical evidence out there, that's not putting the government through its paces. And it's not like the government didn't know about these studies, Your Honor. I mean, like I said, the government has studied these studies in multiple cases. The reason they didn't bring them up here is because they don't apply to Mr. Hatfield. They can't credibly argue that these studies connect Mr. Hatfield to a propensity for gun violence. I guarantee you we would have seen them if they could show that. Cantor holds that that sort of individualized inquiry and individualized petition for a restoration of Second Amendment rights is better addressed to the executive branch, although Congress has disabled that mechanism. But it seems to me, based on that, your remedy is with Congress and the executive, not through judicial requests for exemption via as-applied challenges. Once the Court has held that felony fraud convictions are a predicate and foreclose any as-applied challenges, which I think is the import of Cantor, that's sort of the end of the line for as-applied challenges when the underlying conviction is for felony fraud. Well, I guess a couple of things in response to that, Your Honor. I'm not sure this is the same as felony fraud. In fact, I know it's not the same as felony fraud that was in Cantor. This is a different offense. This is more akin to forgery, as Judge Gilbert said, and it's a different offense. So that's the first thing. The second thing is… Is it not in the basket of crimes that are considered mala in se? Well, I don't… False statements? I guess I don't know the answer to that, Your Honor. Probably. But, again, I think what Cantor did do and what's important here is Cantor looked to the facts around the conviction. I mean, those quotes I read are the Cantor court comparing them to the defendants in Bindurup and the specifics of their conviction that were different. With respect to those comparison points, Hatfield comes out in favor of it not applying. No question. His crime is trivial compared to Cantor's crime. But the import of the reasoning of the opinion is that crimes in this category are not amenable to as-applied challenges because they're serious felony crimes. And there's support for…empirical support for the proposition that serious felony crimes, even of a nonviolent nature, are at least prone to a significant or not insignificant risk of recidivism or violent crime. I guess respectfully, Your Honor, footnote 12, I think, says that that's not true. It says that the nonviolent as-applied challenge aspect from Williams was dictum. But it also says that there could be a plaintiff out there that has an as-applied challenge, a nonviolent felon who has an as-applied challenge. And, again, as Judge Gilbert said, if anyone has it, it's Mr. Hatfield to the trivial nature of his crime, as you mentioned. Well, nonviolent felons not convicted of fraud offenses, which was the kind of offense at issue in Cantor. There are many other nonviolent felonies. I think so, Your Honor. Entering the den of a hibernating bear is a felony in Wisconsin. I didn't know that one. And if you survive it, you can go to prison for more than a year. Okay. Well, I didn't know about that one, Your Honor. Maybe that person shouldn't be disarmed for life. I would agree, Your Honor. And would have a good as-applied challenge. But I still think that Mr. Cantor does as well because I don't think Cantor applies only to just what the felony was, but also the facts surrounding it. The fact that the candidate majority mentions two times that Mr. Cantor served prison time, the fact that the majority goes through the substantial nature of the fraud that was committed there shows it wasn't just looking. If the holding had been nonviolent fraud felons are out, that would have been said expressly, and I don't think footnote 12 would be there. But I think footnote 12 is what is, frankly, I think it's why we're here today. I mean, it allows someone like Mr. Hatfield, whose circumstances are materially different from Mr. Cantor's, to continue to have an as-applied challenge. And still, it goes back to, I sound like a broken record on fit and burden and the studies, but those studies in Cantor don't apply to someone like Mr. Hatfield. And if they did, they'd be in this case. That's why they're not here. And one more thing about those statistics. As Judge Barrett pointed out in her dissent, those apply to nonviolent felons across the board. They, I think in some of those studies, over a fifth of the nonviolent felons are drug offenders. They simply are too broad to apply to all nonviolent felons, which is why the absence of fit is evident from those studies. Mr. O'Connor, how much do you rely on the fact that Mr. Hatfield's violations are dated? I don't think you have to rely on that fact. Well, I'm asking you, do you rely on it? For example, if they occurred last year as opposed to 1990? I would say it doesn't matter. I would say that the nature of the felony, the facts surrounding the conviction, what actually disarms you is the underlying felony. If that underlying felony doesn't show any propensity for violence, there's no evidence from the facts surrounding it, then 922, you shouldn't be able to be disarmed. So to conclude, in light of the facts, there is absolutely no basis for the government's contention that disarming Mr. Hatfield advances the government's interest in preventing gun violence, and the district court's decision should be affirmed. Thank you. Mr. Walters. Thank you, Your Honors. Just a few brief points. The sort of inquiry that we've just heard proposed is expressly foreclosed by Cantor. Cantor says at page 23 that the argument there was that the government must show, quote, a substantial relationship between denying Mr. Cantor a firearm and furthering the government's objective of preventing firearm misuse and armed violence. Cantor is mistaken. And similarly, on page 21, the court ruled that prohibiting even nonviolent felons from possessing a firearm is substantially related to its interest in preventing gun violence. So you simply don't need to look at the sort of facts surrounding each individual crime. And as Judge Easterbrook alluded to, that would be a very difficult task, which, again, as the Supreme Court has recognized, is better suited to the executive to the extent that it can be performed at all, which Congress found that it could not be. Certainly, the amount of the dollar amount that was obtained from the government unlawfully should not be a basis of distinguishing constitutional status between this case and Mr. Cantor. And similarly, jail time, as we explained in our brief, there's a host of factors that ultimately inform how much jail time someone is sentenced to. Things like cooperation, the need to support a family, and that similarly is not supported by the Cantor opinion. Only a few other minor things. Obviously, this court, to the extent that it affirms, doesn't need to reach step one. This court's prior opinions have chosen not to do that when it considers the evidence to be inconclusive. They have not held, of course, that the government loses at step one. They have simply chosen to proceed to step two. I think Cantor makes that very clear. But, of course, as Al as well expressly said, that it was moving on to step two. Again, Your Honors, the government's interest in restricting guns to those who are law-abiding or responsible, and in the words of Magistrate Rodriguez, in preventing people who have already disrespected the law, including felons, from possessing guns, is eminently served here where 1001 is a mal-in-say felony. It has long been a part of American criminal law since the 1860s, and there simply is no daylight between this case and the Cantor case. We therefore respectfully request that the court reverse. Thank you, Mr. Walters, Mr. Oppenheimer. Thanks to all counsel. The case is taken under advisement. Court will proceed.